IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Janet I. Dillard,                    :

    Plaintiff,                  :

  v.                                 :        Case No. 2:11-cv-080

Commissioner of Social Security,     JUDGE MICHAEL H. WATSON
                                     Magistrate Judge Kemp
    Defendant.                  :

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Janet I. Dillard, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability benefits and supplemental security income. Those applications were filed with a protective filing date of June 13, 2007, and alleged that plaintiff became disabled on February 28, 2003. At the administrative hearing, she amended her alleged onset date to July 25, 2006.

After initial administrative denials of her claim, plaintiff was given a hearing before an Administrative Law Judge on December 4, 2009. In a decision dated February 2, 2010, the ALJ denied benefits. That became the Commissioner's final decision on January 4, 2011, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on April 4, 2011. Plaintiff filed her statement of specific errors on May 27, 2011. The Commissioner filed a response on August 30, 2011. No reply brief has been filed, and the case is now ready to decide.

II. The Lay Testimony at the Administrative Hearing

Plaintiff's testimony at the administrative hearing is found at pages 38 through 64 of the record. Plaintiff, who was 63 years old at the time of the hearing and is a high school graduate, testified as follows.

Plaintiff was driven to the administrative hearing by her son. She testified that she has never had a driver's license due to her diabetes. She last worked as a telephone solicitor but that was not a full-time position. Before that, she had worked as a cashier and stock person at a discount pharmacy. She had held other cashier and stocker jobs at a discount stores before that. Most of these jobs required her to lift 20 to 30 pounds.

Plaintiff testified that she is unable to work because she cannot stand for long periods of time due to pain in her lower back. She is unable to afford any treatment and takes only over-the-counter medications for the pain. In addition, she has trouble with her legs hurting and burning. She also has diabetic neuropathy in her feet.

Plaintiff also testified that she has passed out at various times because of drops in her blood sugar. In addition, variations in her blood sugar cause her to be confused. She also has some arthritis in her hands and a frozen shoulder.

On a daily basis, plaintiff is able to clean her room and to read. She can fix her own meals and do her own laundry. She also shops for groceries and watches television. She takes insulin four times a day for her diabetes and also takes blood pressure medication. She is able to hear only through her left ear and has a hearing aid in that ear. She suffers from episodes of hyperglycemia at least twice a week and the episodes last for as much as an hour. She also suffers from episodes of hypoglycemia, and those episodes can last for half an hour after she eats or drinks something. They can cause her to be exhausted for the rest of the day.

### III. The Medical Records

The medical records in this case are found beginning on page 237 of the administrative record. They can be summarized as follows. Because plaintiff's claims relate primarily to her

cervical radiculopathy and her diabetes, records relating to those impairments will be highlighted.

Plaintiff was seen by Dr. Lin in 2004 and again in 2006. Based on tests which he ran, he first diagnosed carpal tunnel syndrome, bilateral ulnar mononeuropathy, and chronic cervical radiculopathy at C7-8. Later, he stated that he suspected a benign essential tremor as well. In between these two visits, plaintiff underwent a right carpal total release and also had a workup for carotid artery stenosis. (Tr. 237-52).

The file contains a number of records from Eastland Family Health. They indicate that plaintiff was being treated for hypoglycemia, insulin-dependent diabetes mellitus, and hypertension. She was referred to Dr. Karne for evaluation of her diabetes in 2007. He saw her on June 27, 2007 and noted that she reported episodes of hypoglycemia 3 to 4 times per week and that her fasting blood sugar ranged from 27-256. She reported a large number of symptoms from which it was hard to detect a pattern. Dr. Karne changed her insulin regimen and recommended that she check her blood sugar four times daily. He arranged to see her again in three months. (Tr. 268-83).

Dr. Gahman, a state agency reviewer, completed a physical capacities evaluation report on September 13, 2007. He concluded that plaintiff could lift 50 pounds occasionally and 25 pounds frequently and that she could stand, walk, and sit about six hours each in a workday. She had some other postural limitations as well but no manipulative or visual limitations. However, she would need to avoid exposure to hazards such as machinery or heights. (Tr. 348-55). This was later confirmed by Dr. Holbrook. (Tr. 362).

Dr. Karne saw plaintiff again on October 4, 2007. At that time, she reported fatigue and dizziness and noted that her blood sugars were mostly in the one hundreds at fasting but

progressively increased over the course of the day. Her hypoglycemic episodes were significantly reduced. He indicated that her diabetes was still uncontrolled and he changed her insulin regimen again. He scheduled another follow-up visit for three months. (Tr. 356-58). When he saw her in March 2008, he attributed her variable blood sugars to not counting carbohydrates. At a June, 2008 visit, he saw improvement but noted that her sugar was high because of dietary indiscretion, and he described her diabetes as uncontrolled at that time. In December, 2008, Dr. Karne indicated that plaintiff's diabetes was controlled and that her blood sugars had improved significantly compared with the last visit. He wrote another letter after seeing plaintiff on March 24, 2009 in which he indicated that plaintiff's blood sugars were reasonably well controlled but slightly higher than the previous visit. (Tr. 368-80).

IV. The Medical Expert Testimony

A medical expert, Dr. Cherdron, testified at the administrative hearing. See Tr. 67-69. Dr. Cherdron testified that there was evidence in the record that plaintiff suffered from diabetes mellitus, insulin dependent, hypertension, bilateral carpal tunnel syndrome with right release operation in 2005, carotid stenosis, a small left adrenal adenoma, diverticulosis, and hearing loss. He noted that cervical radiculopathy was "listed in the record" but he could not find it in the evidence, and that osteoarthritis in the hips was "questionable."

Dr. Cherdron further testified that plaintiff could lift 40 pounds occasionally and 20 to 25 pounds frequently. He thought she could stand or sit for six hours each in a work day "with appropriate breaks," and walk four to six hours. He limited her to occasional crouching, crawling, stooping, and climbing stairs, and said she should never climb ropes or ladders or work around

-4-

heights or hazardous and moving machinery.  She also should avoid
extreme hot and cold temperatures due to her neuropathy.

In response to questions from plaintiff's attorney, Dr.
Cherdron agreed that a diabetic whose disease is not under
control would have episodes of hyperglycemia or hypoglycemia.  He
agreed that the way plaintiff described such episodes was
consistent with the way people with uncontrolled diabetes
experience them.

## V.  The Vocational Testimony

Mr. Hartung, a vocational expert, also testified at the
administrative hearing.  See Tr. 69-72.  He characterized
plaintiff's past work as a cashier/checker as light and semi-
skilled.  He was asked to assume that plaintiff had either the
limitations described in Exhibit 11F (the assessment done by Dr.
Gahman, the state agency reviewer) or those to which the medical
expert testified.  In response, Mr. Hartung stated that plaintiff
could do the checker/cashier job, as well as a full range of
light and sedentary jobs and some medium jobs.  However, if she
were as limited as her testimony at the hearing indicated, she
could not work due to the symptoms caused by her diabetic
condition.

## VI.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 11
through 22 of the administrative record.  The important findings
in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff
had not engaged in substantial gainful activity from her alleged
onset date of July 25, 2006 through the date of the decision.  As
far as plaintiff's impairments are concerned, the ALJ found that
plaintiff had severe impairments including insulin dependent
diabetes mellitus, peripheral vascular disease - carotid
stenosis, bilateral carpal tunnel syndrome, status post right

carpal tunnel release, a hearing loss with an amplification
device, hypertension, diverticulosis/gastroesophageal reflux
disease, a small left adrenal adenoma, and cervical radiculopathy
with no electromyogram evidence. The ALJ also found that these
impairments did not meet or equal the requirements of any section
of the Listing of Impairments (20 C.F.R. Part 404, Subpart P,
Appendix 1).

Moving to the next step of the sequential evaluation
process, the ALJ found that plaintiff had the residual functional
capacity to lift 40 pounds occasionally and 20 to 25 pounds
frequently, to sit, stand and/or walk for six hours in an eight-
hour work day with appropriate breaks, and occasionally to climb
stairs, stoop, crouch, and crawl. She could not climb ropes or
scaffolds and was required to avoid heights and hazardous and
moving machinery. The ALJ accepted the vocational expert's
testimony that someone with such limitations could perform
plaintiff's past work as a cashier/checker. As a result, the ALJ
concluded that plaintiff had not demonstrated an entitlement to
benefits.

VII. <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, plaintiff raises three
issues. She argues that the administrative decision improperly
relied on the opinion of Dr. Cherdron, that the treating
physician rule was not properly followed, and that there was no
definition or description of what Dr. Cherdron meant by
"appropriate breaks." The Court reviews the administrative
decision under this legal standard:

<u>Standard of Review.</u> Under the provisions of 42 U.S.C.
Section 405(g), "[t]he findings of the Secretary [now the
Commissioner] as to any fact, if supported by substantial
evidence, shall be conclusive. . . ." Substantial evidence is
"'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

The Court notes, first, that a number of plaintiff's objections about Dr. Cherdron's opinions do not constitute adequate reasons for concluding that the ALJ was not entitled to rely on them. For example, plaintiff chides both Dr. Cherdron and the ALJ for failing to recognize that her cervical radiculopathy (which the ALJ found to be a severe impairment) was diagnosed on the basis of an EMG. She appears to be correct that the record shows than an EMG was done in 2004, but the failure of either Dr. Cherdron or the ALJ to acknowledge the basis for the diagnosis does not appear to have affected their evaluation of this impairment, and plaintiff does not argue that her cervical radiculopathy caused limitations not taken into account in the ALJ's assessment of her residual functional capacity.

Plaintiff also criticizes Dr. Cherdron for coming up with a residual functional capacity finding which is similar to that of the state agency reviewers (and which was similar to an RFC finding made in connection with plaintiff's prior application for benefits), and for being a pathologist rather than some other type of physician. However, a pathologist has medical training and there is no hard and fast rule (apart from specific statutory provisions relating to children's disability cases, see 42 U.S.C. §1382c(a)(3)(I), which have no application here) that the medical expert in a social security case specialize in the exact condition or conditions from which the claimant suffers. Cf. Jennings v. Astrue, 2009 WL 7387721 (E.D. Pa. November 30, 2009) (no error in calling cardiologist to testify in case involving orthopedic injuries), adopted and affirmed in part 2011 WL 338799 (E.D. Pa. January 31, 2011).

Further, it is clear that both the state agency reviewers and Dr. Cherdron considered not only the prior adjudication, but subsequent medical records, and that Dr. Cherdron made some adjustments in the RFC based on those records. Thus, the record does not support plaintiff's claim that these sources simply "regurgitated" the prior finding without reference to the additional medical evidence submitted in support of plaintiff's most recent application for benefits. In short, none of these arguments provides a basis for a ruling that the ALJ should have afforded little or no weight to Dr. Cherdron's testimony.

The more significant objection plaintiff makes to the ALJ's decision is that he did not credit the various reports from Dr. Karne, plaintiff's treating physician for her diabetes, to the effect that her blood sugar was not well-controlled until approximately two years after her alleged onset date. As the Court has noted in the summary of the medical evidence recited above, Dr. Karne made efforts over several years to get plaintiff

to bring her blood sugar under control, but it was not until his report of December, 2008, that he concluded that her diabetes was well-controlled. Plaintiff argues that his reports, coupled with her testimony or reports to him about the frequency of her hyperglycemic and hypoglycemic episodes, constitute an opinion from a treating physician as to disability, and that the ALJ did not follow the prescribed process for discounting such an opinion. See 20 C.F.R. §§404.1527, 416.927.

The ALJ clearly did not view this evidence in the same fashion. Rather, the administrative decision makes it clear that, in the ALJ's view, neither Dr. Karne nor any other treating source expressed an opinion as to disability; as the ALJ stated, "a review of the record does not reveal that any of the claimant's physicians have ever suggested she is disabled and/or unable to work." (Tr. 21). For this reason, the ALJ did not do the type of analysis required by the "treating physician rule," did not determine what weight to give the opinion of Dr. Karne (beyond discussing how his reports related to the issue of uncontrolled diabetes), and did not articulate reasons for rejecting Dr. Karne's views, if any, about plaintiff's disability. Thus, as properly phrased, the question plaintiff raises is whether the ALJ should have considered Dr. Karne's statements about the extent to which plaintiff's diabetes was controlled as opinions concerning her ability to work. If so, this case would have to be remanded for further articulation of the reasons why his opinions were not given controlling weight. See, e.g., Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

The Commissioner responds to this argument by stating that "treatment notes like Dr. Karne's that merely record observations or a patient's subjective complaints do not qualify as opinions under agency regulations." Commissioner's Memorandum, Doc. #17,

at 12.  In support, the Commissioner cites to 20 C.F.R. §040.4527(a)(2), which states that "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Although it is true that this regulation permits medical opinions to include views on what a claimant can still do despite his or her impairments and what the claimant's physical or mental restrictions are, it does not state that medical opinions must contain such information; rather, any statement from an acceptable source that "reflect[s] judgments about the nature and severity of [an] impairment" would seem to fall into the defined category of medical opinions.  So Dr. Karne's reports cannot be rejected as an opinion from a treating source just because he did not expressly state his view about plaintiff's physical restrictions.

This does not mean, however, that every medical opinion from a treating source is subject to the "treating physician" rule laid out in §404.1527(d)(2).  That regulation restricts its application to "a treating source's opinion on the issue(s) of the nature and severity of your impairment," and provides that if such an opinion "is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  If it not afforded such weight, the ALJ is required to "give good reasons ... for the weight [given to the] treating source's opinion."  Id; see Rogers v. Comm'r of Social Security, 486 F.3d 234, 242 (6th Cir. 2007).  The question raised by this regulation is, then, whether Dr. Karne's reports are opinions "on the issue(s) of the nature and severity" of plaintiff's diabetes.

In a further effort to persuade the Court that they are not,

the Commissioner cites to Bass v. McMahon, 499 F.3d 506, 510 (6th Cir. 2007), for the proposition that "observations, without more, are not the type of information from a treating physician which will be provided great weight under 20 C.F.R. § 404.1513(b)." There, the observations made by the treating source did not rise to the level of "medical judgments" and, as a result, "the ALJ had no duty to give such observations controlling weight or provide good reasons for not doing so." Id.

Here, it stretches the language and intent of the regulations to say that the opinion of a treating physician about the extent to which his patient's diabetes is successfully controlled is not a "medical judgment." Dr. Karne did not simply report (as the physician in Bass v. McMahon had done) his observations of his patient's behavior when she visited him; rather, he used objective measures concerning her blood sugar levels to decide if her diabetes was being controlled or not, and made medical decisions - such as changing her medications and their dosage - based on these measures. Other courts have considered statements about whether a claimant's diabetes is controlled to be medical opinions subject to §404.1527(d). See, e.g., Osborn v. Astrue, 2010 WL 2772480 (N.D. Ill. July 12, 2010). Thus, Dr. Karne, who is undisputedly a treating physician, expressed medical judgments in his reports, and the treating physician rule applies to those judgments.

It is true, of course, that "a treating physician's diagnosis is not by itself determinative of the ultimate disability determination." Canup v. Commissioner of Social Security, 2009 WL 891736, *13 (S.D. Ohio March 31, 2009). Nevertheless, the fact that it is not determinative does not mean that a diagnosis can never have an effect on the disability determination. That is especially true where, as here, there was testimony in the record that the episodes which plaintiff

-11-

testified to were consistent with a diagnosis of uncontrolled diabetes, and where the primary basis for the ALJ's decision was his conclusion that her diabetes was, contrary to the conclusion apparently reached by Dr. Karne, under sufficient control during the relevant time period that she could still do her past relevant work.

The ALJ's decision seems to rest on two separate conclusions. First, he found that the "evidence ... reflects that once the claimant began to follow her doctor's advice, her blood sugars were 'well controlled.'" (Tr. 18). Second, he appears to have concluded that any evidence to the contrary, such as Dr. Karne's reports of February and June, 2008, could be explained by plaintiff's failure to follow Dr. Karne's instructions, such as her consumption of a "variable bedtime snack," her failure to count carbohydrates on a consistent basis, or her "dietary indiscretions" while visiting her daughter. Thus, he stated that any fluctuations in her blood sugars before Dr. Karne concluded that they were well-controlled were "significantly due to the claimant's own actions and inactions." Id. He did not, however, invoke 20 C.F.R. § 404.1530(b), which reads "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled," as a basis for denying benefits, nor does he appear to have followed the required procedures if that, in fact, was the basis of the decision to deny benefits. See, e.g., Social Security Ruling 82-59; Nunley v. Barnhart, 296 F.Supp.2d 702 (W.D. Va. 2003); see also Franklin v. Astrue, 2010 WL 2667388 (S.D. Ohio June 10, 2010). Rather, despite making that statement, which seems to imply that plaintiff might have been disabled due to uncontrolled diabetes largely of her own making, the ALJ found that "the greater weight of the evidence in the record demonstrates that the claimant's blood sugars are well controlled."

If the treating physician rule applies here - and the Court holds that it does - the ALJ was not entitled to reject Dr. Karne's opinion about how well controlled plaintiff's diabetes actually was simply on the basis that "the greater weight of the evidence in the record" points to a contrary conclusion. That is, "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." <u>Friend v. Commissioner</u>, 375 Fed. Appx. 543, 552 (6th Cir. April 28, 2010). The Court does not believe that the administrative decision in this case clearly articulates, in a way that would satisfy the requirements of §404.1527(d) and the Court of Appeals' decisions in cases such as <u>Wilson, supra</u>, what other evidence contradicted Dr. Karne's findings, how much weight was assigned to his opinions, and the reasons for that assignment. Additionally, the decision cannot be sustained on the alternative ground that plaintiff was disabled due to uncontrolled diabetes for at least a twelve-month period following her onset date but was not entitled to benefits because she did not follow a prescribed course of treatment, both because that does not appear to have been the actual reason for the decision to deny benefits, and because of the lack of compliance with SSR 82-59. A remand is required in order to permit these issues to be addressed.

This disposition makes it unnecessary to rule on plaintiff's last statement of error concerning what was meant by "appropriate breaks" when the ALJ and the experts used that term. It seems that the Commissioner's argument on this point is the more persuasive - that they all understood the phrase to mean those breaks which are normally taken and permitted during a work day - but a remand will give the Commissioner an opportunity to clarify

this point.

## VIII. Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be sustained and that this case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## IX. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge